# UNITED STATES DISTRICT COURT

## DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **CRIMINAL COMPLAINT** |
| v. | |
| JOSE GUERRERO-VILLANUEVA, | Case Number: 26-MJ-19-ABJ |
| Defendant. | |

I, Alejandro Pena, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

### COUNT ONE

On or about March 26, 2026, in the District of Wyoming, the Defendant, **JOSE GUERRERO-VILLANUEVA**, being an alien and having been excluded, removed, and deported from the United States on or about January 20, 2007, was found in the United States without having received the express consent of the Attorney General or his successor, the Secretary of the Department of Homeland Security, since that date to reapply for admission to the United States.

In violation of 8 U.S.C. § 1326(a) and (b)(1).

I further state that I am a Deportation Officer with ICE Enforcement and Removal Operations and that this complaint is based on the following facts: *see attached sworn statement.*

———————————————————
Signature of Complainant
ALEJANDRO PENA

Sworn and attested by the applicant before me by telephone, bearing a previous signature submitted by email communication in accordance with the requirements of Fed. R. Crim. P. 4.1

04-21-2026 at 1:38 p.m.    at    Cheyenne, Wyoming
Date                               City and State

HON. Scott P. Klosterman
United States Magistrate Judge

———————————————————
Signature of Judicial Officer



## SWORN STATEMENT IN SUPPORT OF CRIMINAL COMPLAINT
## DO PENA ALEJANDRO
### U.S. v. JOSE GUERRERO-VILLANUEVA

1.      I, Alejandro Pena, am a Deportation Officer of the United States Department of Homeland Security, Immigration and Customs Enforcement (hereafter referred to as ICE), assigned to the Cheyenne, Wyoming ICE office.  This complaint is to establish probable cause and doesn't include all the facts in this case, that I know at this time.

2.      I have been employed as a Deportation Officer with the Enforcement and Removal Operations office in Cheyenne, Wyoming since April 2023.  I have over six years' experience enforcing Immigration and Customs laws within the United States.  I have successfully completed the Enforcement and Removal Operations Deportation Officer Training Program from the Federal Law Enforcement Training Center.  I have also completed the Border Patrol Basic Training Program at the Federal Law Enforcement Training Center in Artesia, New Mexico.  Based on my training and experience in the investigation of federal immigration laws and my investigation of the facts outlined below, I have reason to believe that **JOSE GUERRERO-VILLANUEVA** is unlawfully present in the United States after having been previously removed from the United States by ICE.

3.      On March 26, 2026, a 287g Task Force Officer (TFO) from the Laramie County Sheriff's Office assisted with a vehicle stop for a traffic violation at or around West 19th St at Bent Ave in Cheyenne, Wyoming. **GUERRERO-VILLANUEVA** was the male driver encountered due to driving the wrong way on a one-way street. The TFO identified himself as an Immigration Task Force Officer to **GUERRERO-VILLANUEVA** and asked if **GUERRERO-VILLANUEVA** had any identification, to which **GUERRERO-VILLANUEVA** provided a Mexico voter card that read the name of "Jose **GUERRERO-VILLANUEVA**". **GUERRERO-VILLANUEVA** stated to the TFO that **GUERRERO-VILLANUEVA** had no paperwork or authorization to be in the United States. During the course of their investigation, it was determined that **GUERRERO-VILLANUEVA**, Jose, who was present in the vehicle may be unlawfully present in the United States. The TFO contacted the ICE supervisor in charge per the memorandum of agreement. Assistant Field Office

Director (AFOD) Carter gave authorization for arrest at approximately 1645 hours. **GUERRERO-VILLANUEVA** was arrested and transported to the Laramie County jail without incident.

4.    On March 27, 2026, I reviewed documents received via email from the Alien Registration File ending in 968, pertaining to **GUERRERO-VILLANUEVA.** The documents included: 1) a copy of the Stipulated Order of the Immigration Judge (EOIR-7A), dated January 11, 2007, ordering **GUERRERO-VILLANUEVA** be removed to Mexico; 2) a government form I-205 (Warrant of Removal/Deportation) and I-94 (Departure Record) revealing **GUERRERO-VILLANUEVA** had been formally removed to Mexico at Brownsville, Texas, on January 20, 2007, corresponding to that removal order.

5.    On March 27, 2026, I reviewed the Computer Linked Application Information Management System (CLAIMS) database and found no record or indication that **GUERRERO-VILLANUEVA** had applied to either the Attorney General of the United States or his successor, the Secretary of Homeland Security, for permission to re-enter the United States after having been formally removed.

6.    On March 27, 2026, I reviewed the criminal history and the government form I-213 (Record of Deportable/Inadmissible Alien), related to **GUERRERO-VILLANUEVA** which revealed; 1) a conviction for Operating Vehicle without License-1st/2nd, entered on December 19, 2005, for which the sentenced imposed was court fines; and 2) a conviction for felony Assault 2nd Degree, entered January 3, 2007, for which the sentenced imposed was 5 years' probation.

7.    On March 27, 2026, I conducted an in-person interview of **GUERRERO-VILLANUEVA** at the Laramie County Jail, located in Cheyenne, Wyoming. On March 27, 2026, **GUERRERO-VILLANUEVA** was advised of his rights per *Miranda*, after which **GUERRERO-VILLANUEVA** chose to invoke those rights and would not answer questions without the presence of an attorney. **GUERRERO-VILLANUEVA** was also advised of his right to speak with an officer from the Mexico consulate, per the I-213 Record of Deportable/Inadmissible Alien form.

8.    On March 28, 2026, I obtained a set of **GUERRERO-VILLANUEVA's** fingerprints at the Laramie County Jail. These fingerprint images were submitted to ICE's biometric identification system (IDENT) and were found to match the pre-existing immigration record associated with **GUERRERO-**

**VILLANUEVA.** These fingerprints were also submitted to the Next Generation Identification (NGI) system and were found to match a pre-existing record associated with **GUERRERO-VILLANUEVA.**

9. On March 28, 2026, I determined the following facts pertaining to the **GUERRERO-VILLANUEVA's** flight risk and risk to the community: 1) **GUERRERO-VILLANUEVA** has a criminal record to include one (1) felony conviction and one (1) misdemeanor.

**END OF SWORN STATEMENT**

## PENALTY SUMMARY

**DEFENDANT NAME:**        JOSE GUERRERO-VILLANUEVA

**DATE:**        April 21, 2026

**INTERPRETER NEEDED:**        Yes

**VICTIM(S):**        No

**OFFENSE/PENALTIES:**        **8 U.S.C. § 1326(a) and (b)(1)**
(Illegal Re-Entry of Previously Deported Alien into the United States)

0-10 Years Imprisonment
Up To $250,000 Fine
3 Years Supervised Release
$100 Special Assessment

**AGENT:**        Alejandro Pena, ICE ERO

**AUSA:**        Jesse Naiman, Assistant United States Attorney

**ESTIMATED TIME OF TRIAL:**        1 to 5 days

**WILL THE GOVERNMENT SEEK DETENTION IN THIS CASE:**        Yes

**ARE THERE DETAINERS FROM OTHER JURISDICTIONS:**        No